UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-194-TBR-LLK

CHARLES D. TUCKER,                                                                               PLAINTIFF

v.

HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY,                                                                           DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on two motions. First, Plaintiff Charles D. Tucker filed a Motion for Summary Judgment. [DN 29]. Defendant Hartford Life and Accident Insurance Company responded, [DN 35], and Plaintiff replied, [DN 36]. Additionally, Defendant filed a Motion for Summary Judgment. [DN 31]. Plaintiff responded, [DN 34], and Defendant replied, [DN 37]. These matters are ripe for adjudication. For the reasons stated herein, Plaintiff's Motion for Summary Judgment, [DN 29], is DENIED and Defendant's Motion for Summary Judgment, [DN 31], is GRANTED. The Court will enter a separate Order and Judgment contemporaneous to this Memorandum Opinion.

**BACKGROUND**

In 1995, Continental Casualty Company ("CNA") issued Policy No. 01-A-1795 to American Physicians Insurance Trust ("APIT") to provide physician-specific disability insurance to APIT's members. [DN 31-1 at 299]. In 1997, APIT representative Norman Agin contacted Plaintiff Charles Tucker about obtaining disability insurance. [DN 29 at 123]. During Plaintiff's communications with the representative, he claims that he received a document titled "American Physicians Insurance Trust Group Disability Income Plan Highlights." *Id.* at 123–24. After reviewing the material, Plaintiff purchased Policy No. 01-A-1795 effective June 1, 1997. *Id.* at 124. He was forty-four-years old. *Id.* Before Plaintiff's fiftieth birthday, he was diagnosed with

1

Pott's Disease, or tuberculosis of the spine. *Id.* Plaintiff underwent three back surgeries and continued treatment. *Id.* As a result of his condition, Plaintiff was unable to continue to practice medicine as a general and vascular surgeon. *Id.* at 125. Plaintiff submitted a claim for disability benefits pursuant to his CNA policy. *Id.* The claim was approved, and Plaintiff began receiving a monthly benefit of $10,000. *Id.*

On June 15, 2000, APIT sent Plaintiff a letter informing him that it had decided to change insurers. [DN 31-1 at 304]. Beginning on August 1, 2000, Hartford Life and Accident Insurance Company would underwrite the disability plans offered to APIT members. *Id.* The letter also stated that if Plaintiff was currently disabled, his claim would continue to be paid by CNA—the coverage would only transfer to Hartford if Plaintiff was no longer disabled or had returned to full-time employment. *Id.* A month later, Plaintiff received a certificate of insurance under Hartford Policy No. AGP-5083. *Id.* The certificate also provided that Plaintiff's prior disability claim under Policy No. 01-A-1795 would continue to be administered by CNA. *Id.* at 305. However, on January 1, 2004, Hartford assumed the rights and obligations under Plaintiff's CNA policy. *Id.*

On February 17, 2016, Hartford sent Plaintiff a letter offering a lump sum settlement of his future entitlement to long-term disability benefits. [DN 29 at 127]. The letter stated that Plaintiff was entitled to a monthly benefit of $10,000 while he remained totally disabled, but not beyond his seventieth birthday. [DN 29-5]. According to Hartford's calculations, Plaintiff's future disability benefits would total $663,732. *Id.* Hartford offered to purchase the future benefits for $544,260. *Id.* Plaintiff's attorney responded to Hartford's offer by stating that Plaintiff was entitled to lifetime benefits under his policy. [DN 29-6]. Therefore, counsel requested that Hartford "review[] the policy and provide[] a lump sum offer . . . to buy out Dr. Tucker's benefits based upon the stream of payments that would be due over his life expectancy." *Id.* Upon receiving this

information, Hartford claims it discovered that Plaintiff's policy had been incorrectly coded in its system. [DN 31-1 at 306]. It replied: "We apologize for the incorrect information stating Dr. Tucker's LTD benefits are payable to age 70 and his claim will be corrected to reflect that he is entitled to lifetime benefits under the American Physicians Insurance Policy." [DN 29-7]. However, Hartford declined to issue an additional lump sum settlement offer. *Id.*

When Plaintiff turned sixty-five-years old, Hartford reduced his monthly benefit from $10,000 to $1,000. [DN 29 at 128]. Plaintiff appealed the change claiming he was entitled to $10,000 per month for the remainder of his lifetime. *Id.* On September 14, 2018, Hartford informed Plaintiff that it had reviewed the policy and determined that Plaintiff was entitled to a lifetime benefit of $1,000 per month after his sixty-fifth birthday. [DN 31-1 at 309].

On November 20, 2018, Plaintiff filed suit against Hartford in Calloway Circuit Court alleging breach of contract and requesting a declaratory judgment from the court that Plaintiff is entitled to receive a $10,000 monthly benefit for the remainder of his life. [DN 1-1]. On December 26, 2018, Hartford removed the action to this Court on the basis of diversity of citizenship jurisdiction. [DN 1]. After conducting discovery, both parties filed motions for summary judgment. [DN 29, 31].

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether

an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52). The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

The proper "construction and interpretation of a contract ... are questions of law" for the Court to decide. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (quoting *First Com. Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)). The Court's primary object in construing a contract is to give effect to the parties' intent. *See Baker v. Magnum Hunter Prod., Inc.*, 473 S.W.3d 588, 592 (Ky. 2015). The contract must be examined as a whole, giving effect to "every word in it, if possible." *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992). A contract is ambiguous "if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)). Where a contract is unambiguous, the Court looks "only as far as the four

4

corners of the document" to determine the parties' intent. *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006) (citation omitted). If not, however, the Court will resort to extrinsic evidence "involving the circumstances surrounding the execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Cantrell Supply*, 94 S.W.3d at 385 (citations omitted).

The Court's first job, then, is to determine whether the particular contractual clause at issue is reasonably susceptible to multiple interpretations. In pertinent part, Policy No. 01-A-1795 states:

> MONTHLY BENEFIT AMOUNT:    $10,000
>
> Upon attainment of age 65, any Benefit which exceeds $1,000.00, reduces to $1,000
>
> | MAXIMUM PERIOD PAYABLE | AGE* | PERIOD |
> |---|---|---|
> | | Under 50 | Lifetime |
> | | 50 to 62 | To age 65 |
> | | 63 and over | 2 years |

*Age on date disability commences

[DN 29-2 at 144].

Defendant argues that the "plain and unambiguous language of Policy No. 01-A-1795 requires Hartford to pay Plaintiff $1,000 per month after Age 65." [DN 31-1 at 311]. Plaintiff's Motion for Summary Judgment devotes little discussion as to whether the language of Policy No. 01-A-1795 is ambiguous. Instead, Plaintiff primarily supports his position that he is entitled to a lifetime monthly benefit of $10,000 with language from the Plan Highlights document. Specifically, Plaintiff emphasizes the Plan Highlights' statement: "The Company cannot reduce the benefits during the life of the policy." *Id.* at 132. In response, Defendant claims that Kentucky

5

law prohibits the use of extrinsic evidence to create an "an ambiguity, and in turn, a genuine issue of material fact." [DN 25 at 2550 (citing *Smithfield Farms, LLC v. Riverside Developers, LLC*, 566 S.W.3d 566, 571 (Ky. Ct. App. 2018)].

In reply, Plaintiff asserts that "Plan Highlights are not extraneous evidence that the Court should, as Hartford suggests, ignore." [DN 36 at 2569]. Instead, Plaintiff argues that the Plan Highlights is part of the contract between the parties. *Id.* Policy No. 01-A-1795 defines the contract between Plaintiff and Defendant as "[t]he Policy, the Application, the individual applications of the Insureds and any attached papers . . . ." *Id.* Plaintiff claims that the Plan Highlights is a part of his contract with Defendant because "Dr. Tucker testified that the Plan Highlights came with the policy that he received" in the mail.[1] [DN 26 at 2569 (citing Tucker Depo. at p. 43, 45, 53, 56, 57, 58, 59 and 60)].

Defendant argues that the Plan Highlights are not a part of its contract with Plaintiff for three reasons. First, Defendant asserts that the Plan Highlights do not even describe the insurance policy at issue, Policy No. 01-A-1795, and thus cannot be a part of Plaintiff's contract with Defendant. [DN 31-1 at 310]. Instead, Defendant claims this document describes another insurance policy offered through APIT, specifically, Policy No. 03-A-1795.[2] *Id.* The discrepancies between these two policies and the Plan Highlights are outlined below.

|  | Policy No. 01-A-1795 [DN 29-2 at 144] | Policy No. 03-A-1795 [DN 33-8 at 2504] | Plan Highlights [DN 29-1] |
|---|---|---|---|
| Maximum Period Payable | Lifetime benefits where disability commenced before Age 50 | Age on date disability commences Under age 63: To Age 65 | Monthly benefits are paid to age 65 if disability commences prior to age 63 and for |

---

[1] Plaintiff's argument that the Plan Highlights are a part of his contract with Defendant focuses on the Plan Highlights he claims he received in the mail in 1997. Accordingly, the Court will focus its analysis on this document, not the Plan Highlights Plaintiff claims he received in 2000, referred to by Plaintiff as the "Hartford Plan Highlights."

[2] Defendant claims that CNA replaced Policy No. 01-A-1795 with Policy No. 03-A-1795 and that both policies were not offered at the same time. [DN 31-1 at 313].

6

|  |  | Age 63 and over: 24 Months | two years if disability commences at age 63 or older. |
|---|---|---|---|
| Renewability | This plan is guaranteed renewable up to age 70 provided: 1) you are actively working 30 hours a week: 2) you remain: a member of the sponsoring organization: and 3) the organization continues to sponsor this plan and no similar plan. | Termination Age: 65 | Your plan will remain in force to age 65 as long as you pay the required premium, continue to work at your profession a minimum of 30 hours per week, the plan is sponsored by American Physicians Insurance Trust and the Trust does not sponsor another plan. |
| Total Disability Definition – "Own Specialty" Provision | "Total Disability," or any of its grammatical derivatives, means that due to Injury or Sickness, the Insured is:<br>1. Continuously unable to perform the substantial and material duties of his regular occupation or a specialty<br>2. Under the regular care of a licensed physician other than himself;<br>. . .<br>"Total Disability" means any loss of time, duties and income a result of any regulation, restrictions or modification of policy set by:<br>1. A licensing board;<br>2. The Center for Disease Control and Study<br>3. The Occupational Safety and | "Total Disability" means that, during the Elimination Period and the Insured Occupation Period, the Insured, because of Injury or Sickness, is:<br>1. Continuously unable to perform the substantial and material duties of his regular occupation;<br>2. Under the regular care of a licensed physician other than himself; and<br>3. Not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.<br><br>Thereafter, "Total Disability" means that, because of Injury or Sickness, the Insured is: | Total disability" refers to your own SPECIALTY for the first five years of disability. Benefits are paid if you are under the care of a licensed physician, unable to perform the substantial and material duties of your specialty and are not gainfully employed in another occupation. Thereafter, total disability benefits will be paid if you are unable to work in any occupation for which you are or become qualified by education, training, or experience and you are under the care of a licensed physician. |

7

|  | Health Administration; 4. A Hospital, Clinic Board or an Employer; or 5. Any State or Federal Agency | 1. Continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and 2. Under the regular care of a licensed physician other than himself. |  |
|---|---|---|---|

During his deposition, Plaintiff acknowledged the inconsistencies between the "own specialty" and termination age provisions in his policy and the Plan Highlights document. [DN 33 at 2151–53].

The second reason Defendant believes that the Plan Highlights are not a part of its contract with Plaintiff is because the document was not created by Defendant, but by APIT as marketing material. The document itself is titled: "The American Physicians Trust Group Disability Income Plan Highlights" and specifically states: "These plan highlights contain a brief description of the coverage available and complete details can be found in the Insured's Certificate." [DN 29-1]. Moreover, the Plan Highlights encourage physicians to apply for coverage, which indicates that it is not a part of any specific policy. *Id.* Furthermore, Wendy Agin, Vice President of APIT, submitted a declaration stating that APIT created the Plan Highlights to "provide a brief description of the Plan to potential Plan participants on behalf of APIT." [DN 33-7 at 2498]. Additionally, she provided that (1) to her knowledge, no insurer or administrator ever circulated the Plan Highlight document to any insured to potential insured; (2) the version of the Plan Highlights attached to Plaintiff's Complaint was created to describe Policy No. 03-A-1795, not

8

Policy No. 01-A-1795; and (4) APIT was never authorized to act as an agent by CNA or Hartford to modify, amend or in any manner change the terms of coverage issued. *Id.*

Finally, Defendant highlights the letter Plaintiff received on June 3, 1997 informing him that his request for disability insurance was approved. [DN 33-1 at 2268]. Although Plaintiff testified that there was a copy of the Plan Highlights in the same envelope as this letter, [DN 33 at 2084; 2092; 2095; 2098], the letter itself specifically mentions only two enclosed documents: (1) the Certificate of Insurance; and (2) a prorated premium statement and pre-addressed envelope. [DN 29-2 at 143]. Moreover, Defendant asserts that a third-party administrator, International Benefit Services Corporation, mailed Plaintiff the June 3rd letter. [DN 31-1 at 314]. Additionally, Ms. Agin submitted a declaration that the Plan Highlights were created by APIT as marketing material, and that APIT did not send policy certificates to its members. [DN 33-7 at 2500]. Therefore, Defendant claims that the insurance certificate and the Plan Highlights "were sent by two entirely separate entities, and could not have come in the same envelope." [DN 31-1 at 314]. Based on the foregoing, Defendant argues "[t]here is no reasonable basis to conclude that the 'Plan Highlights' were part of the policy governing Plaintiff's claim." [DN 37 at 2598].

Although the Court must draw all justifiable inferences in Plaintiff's favor for purposes of summary judgment,[3] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), Plaintiff still bears the burden of setting forth specific facts showing that there is a genuine issue of material fact for trial, *id.* at 250, 106 S.Ct. 2505, and "the mere existence of

---

[3] "Here, the parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. . . . In reviewing cross-motions for summary judgment, courts should 'evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party.'" *NetJets Large Aircraft, Inc. v. United States*, 80 F. Supp. 3d 743, 747 (S.D. Ohio 2015), *amended*, No. 2:11-CV-1023, 2017 WL 1378416 (S.D. Ohio Mar. 21, 2017) (quoting *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994)).

a scintilla of evidence in support of the plaintiff's position will be insufficient," *id.* at 252, 106 S.Ct. 2505. Rather, "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* Plaintiff's testimony that he received the Plan Highlights along with his insurance policy on June 3, 1997 is insufficient for a rational trier of fact to conclude that the Plan Highlights formed a part of his contract with Defendant given that his testimony finds no corroboration in the record. *See Goodrich v. Everett*, 193 F. App'x 551, 557 (6th Cir. 2006) (finding plaintiff's testimony insufficient to create a genuine issue of material fact); *Ingram v. Hartford Ins. Co. of Midwest*, No. 06-CV-14085-DT, 2007 WL 627881, at *5 (E.D. Mich. Feb. 23, 2007) ("While deposition testimony can often stand on its own independent of corroboration, under the circumstances of this case, the deposition testimony in favor of Plaintiff's position is insufficient."). Indeed, the language of the Plan Highlights itself clearly contradicts the terms of Plaintiff's insurance policy and Ms. Agin, the Vice President of APIT, declared that her organization created the Plan Highlights to describe Policy No. 03-A-1795. [*See* DN 33-7]. Moreover, Ms. Agin stated that the Plan Highlights were merely a marketing tool and in no way formed part of the contract between Plaintiff and Defendant. *Id.* Accordingly, the Plan Highlights do not form part of the parties' contract and the Court is barred from analyzing the document in determining whether the contractual provision at issue is ambiguous. *Smithfield Farms*, 566 S.W.3d at 571 ("We are confined to the four corners of the contract in determining whether an ambiguity exists.").[4]

The language of Policy No. 01-A-1795 plainly and unambiguously states that once the policyholder reaches age sixty-five, any benefit exceeding $1,000 will be reduced to $1,000. Although Plaintiff attempts to argue that he is entitled to a $10,000 benefit for his lifetime because

---

[4] Even if the Plan Highlights were included in the same envelope as Plaintiff's policy, the Court's conclusion remains unchanged. The Plan Highlights at issue clearly do not describe Plaintiff's policy and Plaintiff has presented no argument as to why a document unrelated to Policy No. 01-A-1795 would control the terms of the parties' agreement.

he became disabled prior to age fifty, [DN 29 at 136], there is no such qualifying language in the Monthly Benefit section of the policy, or any other part of the policy, which would permit a reasonable person to find the provision at issue susceptible to different or inconsistent interpretations, nor does Plaintiff provide any citation to any such language. *"*Where the contract's language is clear and unambiguous, the agreement is to be given effect according to its terms, and '[the] court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.'" *Smithfield Farms*, 566 S.W.3d at 570 (quoting *Frear*, 103 S.W.3d at 106). According to the plain meaning of the contract, after age sixty-five, Plaintiff is entitled to a monthly benefit of $1,000 for the remainder of his lifetime. Therefore, Plaintiff has failed to establish a breach of contract claim and Defendant is entitled to summary judgment.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, [DN 29], is DENIED and Defendant's Motion for Summary Judgment, [DN 31], is GRANTED. The Court will enter a separate Order and Judgment contemporaneous to this Memorandum Opinion.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 23, 2020

CC: Attorneys of Record